O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REZA CAMERON FAILI, et al., as individuals and on behalf of all others similarly situated, | CASE NO. 8:13-cv-1105-JLS (ANx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| vs. | |
| BAC HOME LOANS SERVICING LP, et al., | |
| Defendants. | |

Before the Court are two motions to dismiss, one filed by Defendants Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc., and QBE Specialty Insurance Company ("Insurance Defendants") and one filed by Defendants Bank of America, N.A. and BAC Home Loans Servicing ("Bank of America Defendants").  (Ins. Mot., Doc. 34; BoA Mot., Doc. 35.)  Plaintiffs Reza Cameron Faili, Marsha Guevara, John Kovac, and Manuelita Kovac opposed both motions, (Opp'n to Ins., Doc. 41; Opp'n to BoA, Doc. 40), and Defendants replied.  (Ins. Reply, Doc. 44; BoA Reply, Doc. 45.)  Having read the parties' briefing and taken the matter under submission, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I.   BACKGROUND

Plaintiffs filed the class action complaint in this matter on July 23, 2013. (Compl., Doc. 1), challenging various aspects of Bank of America Defendants' policy requiring borrowers to pay for force-placed hazard insurance on secured properties.  The Complaint asserts six claims:  (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) violation of California's Unfair Competition Law; (4) unjust enrichment / disgorgement; (5) violation of the Florida Consumer Collections Practices Act; and (6) declaratory and injunctive relief.  (*Id*. at 33-44.)  The first, second and sixth claims are asserted only against Bank of America Defendants, and the fourth claim is asserted only against Insurance Defendants.

When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).  Plaintiffs allege that Bank of America was party to an agreement with QBE Holdings, a parent of QBE Financial Institutions Risk Services, pursuant to which Bank of America referred borrowers exclusively to QBE Insurance for

1  force-placed insurance in exchange for a commission on each insurance policy.

2  (Compl. ¶ 10.)  All Plaintiffs had mortgage loan agreements and had insurance

3  force-placed on their mortgaged property.

4

5  **A.    Faili Mortgage**

6  On April 7, 2010, Plaintiffs Reza Faili and Marsha Guevara

7  ("Faili Plaintiffs") entered into a contract with FRM Network, Inc. to obtain a

8  mortgage loan to purchase a property located at 8614 Laurel Canyon Rd., Irving,

9  Texas ("Faili Property"), secured by a deed of trust.  (Compl. ¶¶ 40-41, Ex. 1

10  ("Faili Agreement").)  On June 18, 2010, the loan was transferred to BAC Home

11  Loan Servicing, which was the loan servicer at all times relevant to the litigation.

12  (*Id.* ¶ 42, Ex. 15.)

13  The Faili Agreement required Faili Plaintiffs, as the borrowers, to "keep

14  the improvements now existing or hereafter erected on the Property insured

15  against loss" and mandated that the "insurance shall be maintained in the amounts

16  . . . and for the periods that Lender requires."  (Faili Agreement ¶ 5 ("Insurance

17  Provision").)  The Insurance Provision further provided that, if Faili Plaintiffs

18  failed to maintain hazard insurance on the Property, the lender:

19  may obtain insurance coverage, at Lender's option and Borrower's

20  expense.  Lender is under no obligation to purchase any particular

21  type or amount of coverage.  Therefore, such coverage shall cover

22  Lender, but might or might not protect Borrower, Borrower's equity

23  in the Property, or the contents of the Property, against any risk,

24  hazard or liability and might provide greater or lesser coverage than

25  was previously in effect.  Borrower acknowledges that the cost of

26  the insurance coverage so obtained might significantly exceed the

27  cost of insurance that Borrower could have obtained.

28

1  (Insurance Provision.)

2  The Faili Agreement also stated that, "if . . . Borrower fails to perform the

3  covenants and agreements contained in this Security Instrument . . . then Lender

4  may do and pay for whatever is reasonable and appropriate to protect the Lender's

5  interest in the Property . . . ."  (*Id*. § 9 ("Limiting Provision").)

6  In accordance with the Insurance Provision, Faili Plaintiffs purchased a

7  homeowner's insurance policy.  (*Id*. ¶ 112.)  Faili Plaintiffs maintained the policy

8  until October 2012, when coverage ceased.  (*Id*.)

9  On December 28, 2012, Faili Plaintiffs received a notice from Bank of

10  America's Texas office advising them that force-placed insurance had been

11  purchased from QBE Specialty Insurance Corporation and placed on the Faili

12  Property, backdated to October 10, 2012.  (*Id*. ¶ 113, Ex. 25.)  The notice further

13  explained that Faili Plaintiffs could obtain their own preferred hazard insurance

14  policy and cancel the force-placed insurance for a full refund, and attached a copy

15  of the force-placed insurance policy.  (*Id*. Ex. 25.)  The policy named Bank of

16  America and Faili Plaintiffs as the insured, and charged a total premium of

17  $6,443.70.  (*Id*.)  The amount of coverage was $357,000, despite the fact that the

18  outstanding loan balance was only $293,176.  (*Id*. ¶ 114, Ex. 25.)

19  Faili Plaintiffs later obtained private homeowner's insurance coverage with

20  an effective date of February 5, 2013, at a cost of $1,465.  (*Id*. ¶ 115, Ex. 26.)

21  Faili Plaintiffs paid off their loan in full on May 9, 2013.  (*Id*. ¶ 43, Ex. 14.)

22

23  **B.   Kovac Mortgage**

24  On February 27, 2004, Plaintiffs John and Manuelita Kovac ("Kovac

25  Plaintiffs") entered into a contract with Lendmark Financial Services, Inc. to

26  obtain a mortgage loan on a property located at 4436 56th Avenue, Ter. E,

27  Bradenton, Florida ("Kovac Property"), secured by a deed of trust.  (*Id*. ¶¶ 44-45,

28

Ex. 2 ("Kovac Agreement").)  In 2005, Kovac Plaintiffs refinanced the mortgage through Countrywide Home Loans, Inc., and in 2010 the mortgage was assigned to BAC Home Loans Servicing.  (*Id*. ¶¶ 46-47, Ex. 15.)

The Kovac Agreement contains the same Insurance Provision and Limiting Provision as the Faili Agreement.  (*Id*. Ex. 2 ("Kovac Agreement").)  In accordance with the Insurance Provision, the Kovac Plaintiffs purchased a homeowner's insurance policy through Landmark One Insurance Company.  (*Id*. ¶ 100, Ex. 20.)  The Kovac Plaintiffs maintained the policy until February 27, 2009.  (*Id*. ¶ 100)

On April 22, 2010, Bank of America advised Kovac Plaintiffs that two consecutive force-placed insurance policies had been purchased from Balboa Insurance Company for the Kovac Property.  (*Id*. ¶¶ 101, 103, Exs. 21, 22.)  The insurance policies were made on behalf of BAC Home Loans Servicing, were backdated to February 27, 2009, and were effective through February 27, 2011.  (*Id*. ¶¶ 101, 103, Exs. 21, 22.)  BAC Home Loan Servicing force-placed $146,200 of coverage on the Kovac Property despite the fact that the outstanding loan balance on the loan was only approximately $144,187.  (*Id*. ¶¶ 104-05.)

On April 30, 2010, Bank of America Home Loans Servicing foreclosed on the Kovac Property.  (*Id*. ¶ 49.)  The foreclosure was voluntarily dismissed on May 24, 2011.  (*Id*. ¶ 50, Ex. 16.)

In March 2011, March 2012, and March 2013, the force-placed insurance on the Kovac Property was renewed for the years 2011, 2012, and 2013.  (*Id*. ¶¶ 106-11.)  The 2011 and 2012 policies were provided by either Balboa or "QBE," named BAC Home Loans Servicing as the insured, and were backdated to February 27, 2011 and February 27, 2012, respectively.  (*Id*. ¶¶ 106-08.)  The 2013 policy was provided by QBE Specialty, named Bank of America and the

1  Kovac Plaintiffs as the insured, and was backdated to February 27, 2013.  (*Id.*

2  ¶ 109, Ex. 24.)

3

4  **II.     LEGAL STANDARD**

5          "A jurisdictional challenge under Rule 12(b)(1) may be made either on the

6  face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family*

7  *Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  In other words, a motion to

8  dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be

9  facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

10  2004).  "In a facial attack, the challenger asserts that the allegations contained in a

11  complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*

12  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint,

13  considered in its entirety, on its face fails to allege facts sufficient to establish

14  subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM)*

15  *Antitrust Litig.*, 546 F.3d 981, 984-985 (9th Cir. 2008).  "By contrast, in a factual

16  attack, the challenger disputes the truth of the allegations that, by themselves,

17  would otherwise invoke federal jurisdiction."  *Meyer*, 373 F.3d at 1039.  "In

18  resolving a factual attack on jurisdiction, the district court may review evidence

19  beyond the complaint without converting the motion to dismiss into a motion for

20  summary judgment."  *Id.*  When a motion is made pursuant to Federal Rule of

21  Civil Procedure 12(b)(1), the plaintiff has the burden of proving that the court has

22  subject matter jurisdiction.  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d

23  495, 499 (9th Cir. 2001) *overruled on other grounds by Hertz Corp. v. Friend*,

24  130 S.Ct. 1181 (2010).

25          When evaluating a motion to dismiss under Federal Rule of Civil

26  Procedure 12(b)(6), the Court must accept as true all allegations of material facts

27  that are in the complaint and must construe all inferences in the light most

28

favorable to the non-moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

In considering the motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *cert. denied*, 512 U.S. 1219 (1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

1

2 **III. DISCUSSION**

3   Defendants move to dismiss each of Plaintiffs' claims, including on the

4 ground that Kovac Plaintiffs' claims are barred in part by the filed rate doctrine.

5 (Ins. Mem. at 2, Doc. 34-1; BoA Mem. at 1, Doc. 35-1.)  Insurance Defendants

6 also argue that Plaintiffs lack standing as to QBE Insurance and that the

7 allegations against QBE Specialty are insufficient.  (Ins. Mem. at 2.)  The Court

8 first addresses Insurance Defendants' arguments as to QBE Insurance and QBE

9 Specialty, and Defendants' arguments as to the filed rate doctrine, before

10 addressing the arguments as to the individual claims.

11

12   **A. Standing as to QBE Insurance**

13   "The party invoking federal jurisdiction bears the burden of establishing

14 the following elements: (1) that the plaintiff has suffered an injury in fact—an

15 invasion of a legally protected interest which is (a) concrete and particularized;

16 and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a

17 causal connection between the injury and the conduct complained of; and (3) that

18 it is likely the injury can be redressed by a favorable decision."  *Laub v. U.S.*

19 *Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

20   Insurance Defendants argue that Plaintiffs have not suffered an injury in

21 fact committed by QBE Insurance and lack standing to bring claims against QBE

22 Insurance.  (Ins. Mem. at 5.)  In particular, Insurance Defendants argue that QBE

23 Insurance did not issue or place insurance on Plaintiffs' property and is not

24 responsible for any aspect of the insurance.  (Ins. Mem. at 5-6.)  Insurance

25 Defendants provide a declaration which states that "QBE Insurance Corporation

26 did not issue or write the LPI policy under which Faili and Guevara's property

27

28

1 was insured nor was it responsible for tracking or placement of that LPI policy."

2 (John Dickson Decl. ¶ 10, Doc. 34-3.)

3      Plaintiffs argue that the Complaint asserts that Insurance Defendants work

4 together as a single unit and acted in concert.  (*See* Opp'n to Ins. at 3-4; Compl.

5 ¶¶ 1, 78.)  However, as Insurance Defendants make a factual challenge to

6 standing, the Court also evaluates the factual evidence attached to the Complaint.

7 The Complaint includes evidence that QBE Insurance set certain force-placed

8 insurance rates and worked closely with QBE First.  (Compl. Ex. 5, 9.)  The

9 Complaint further includes a consent order jointly entered into by QBE Insurance

10 Corporation and QBE Holdings, Inc. that relates to the challenged practices.  (*Id.*

11 Ex. 13.)

12      Plaintiffs alternatively request leave to conduct additional discovery as to

13 QBE Insurance.  (Opp'n to Ins. at 6.)  The Ninth Circuit has recognized that

14 "discovery should ordinarily be granted where pertinent facts bearing on the

15 question of jurisdiction are controverted or where a more satisfactory showing of

16 the facts is necessary."  *Laub*, 342 F.3d at 1093.  In *Laub*, the Ninth Circuit held

17 that it was an abuse of discretion to deny discovery where "public documents

18 offered by [plaintiff] suggest that there is at least an arguable claim that the

19 [defendant challenging standing] plays a significant enough role" in the conduct at

20 issue to state a claim.  *Id.*

21      Based on the facts before it, the Court finds it premature to dismiss QBE

22 Insurance without further discovery as to the party's role in the scheme alleged by

23 Plaintiffs.  Accordingly, the Court DENIES Insurance Defendants' Motion to

24 dismiss QBE Insurance.

25

26

27

28

**B.      Claims as to QBE Specialty**

Insurance Defendants move to dismiss QBE Specialty on the ground that the Complaint does not allege any specific allegations as to the party.  (Ins. Mem. at 6.)  Plaintiffs argue that QBE Specialty was inadvertently omitted from an allegation as to the 2012 force-placement of insurance on the Faili Property (the allegation merely lists "QBE").  (Opp'n to Ins. at 7; Compl. ¶ 113.)  The allegation references Exhibit 25, a document indicating that QBE Specialty provided the 2012 force-placed insurance on the Faili Property.  (Compl. Ex. 25.)  Consistent with this exhibit, Insurance Defendants provide a declaration stating that QBE Specialty issued the policy.  (Dickson Decl. ¶ 6.)

In light of the exhibit attached to the Complaint, the Court DENIES the Motion as to QBE Specialty.  Given Plaintiffs' admission that the exclusion of QBE Specialty was inadvertent, Plaintiffs are given leave to correct the omission of QBE Specialty from their allegations.

**C.      Filed Rate Doctrine as to Kovac Plaintiffs**

"The filed rate doctrine[] bars recovery by those who claim injury by virtue of having paid a filed rate."  *Gustafson v. BAC Home Loans Servicing*, LP, et al., No. SACV 11-915-JST (ANx), 2012 WL 7051318, at *4 n.2 (C.D. Cal. Dec. 20, 2012) ("*Gustafson II*") (citations and internal quotation marks omitted).  Defendants move to dismiss Kovac Plaintiffs' claims based on the filed rate doctrine to the extent the claims arise under force-placed insurance policies issued by Balboa Insurance between 2009 and 2012.  (Ins. Mem. at 6-9; BoA Mem. at 27-29.)

This Court has previously declined to dismiss claims where a plaintiff challenged defendants' conduct in force-placing unnecessary, duplicative, or backdated insurance.  *See Gustafson II*, 2012 WL 7051318, at *4 n.2; *Gustafson v.*

*BAC Home Loans Servicing LP*, No. SACV 11-915-JST (ANx), 2012 WL 7071488, at *13 (C.D. Cal. Dec. 26, 2012) ("*Gustafson III*"). In *Gustafson*, this Court drew a distinction between a challenge to defendants' conduct and a challenge to the rates themselves. *See Gustafson II*, 2012 WL 7051318, at *4 n.2; *Gustafson III*, 2012 WL 7071488, at *13. Other courts have drawn a similar distinction. *See, e.g.*, *Smith v. SunTrust Mortg. Inc.*, No. 13-cv-0739, 2013 WL 5305651, at *9 (C.D. Cal. Sept. 16, 2013). Here, as in *Gustafson*, Plaintiffs do not challenge the rates themselves but rather Defendants' conduct in force-placing unnecessary, duplicative and backdated insurance. (*See, e.g.*, Compl. ¶¶ 29, 31, 33, 91.)[1]

Defendants argue that the Court should nonetheless apply the filed rate doctrine because in order to calculate damages the Court would necessarily need to determine the difference between a reasonable rate and the amount that Plaintiffs were charged. (Ins. Mem. at 8; BoA Mem. at 28.) However, based on the allegations in the Complaint it is not clear that the Court would have to determine a reasonable rate to determine damages. If the kickbacks and commissions are determined to be unlawful and the amount of those kickbacks and commissions can be readily ascertained, then damages would be awarded based on the amounts of those kickbacks and commissions, which would not require the Court to determine or declare a reasonable rate. *Cf. Leghorn v. Wells Fargo Bank*, N.A., --- F. Supp. 2d ---, 2013 WL 3064548, at *21 (N.D. Cal. 2013) ("Just because the damages are based on increased costs incurred as a result of the

---

[1] The Court therefore does not address Plaintiffs' arguments that the doctrine should not apply because the filed rates are charged by the insurer to the servicer, not the insured, or that the rate does not apply as to Bank of America, as Bank of America is not an insurance company. (Opp'n to Ins. at 10-12; Opp'n to BoA at 25-26.)

1   alleged kickback scheme does not transform a challenge to conduct and practices
2   into a challenge to premiums.").

3        Accordingly, the Court declines to dismiss Kovac Plaintiffs' claims at this
4   stage based on the filed rate doctrine.

6   **D.   Breach of Express Contract Terms Claim**

7        Plaintiffs allege that Bank of America Defendants breached the express
8   Limiting Provision in the Agreements by, among other things: (1) backdating the
9   force-placed policy to cover periods for which no loss occurred, and (2) charging
10  expenses unrelated to the provision of forced-place insurance to borrowers, such
11  as amounts driven by allegedly illicit profit sharing and below-cost tracking.
12  (Compl. ¶¶ 9-36, 77-99, 151.)  As Defendants do not offer materially different
13  arguments under either state's law, the Court addresses the claim under Texas and
14  Florida law jointly.  The Court finds that Plaintiffs have adequately pleaded a
15  claim under Florida and Texas law for breach of express contract terms.

16       Under Florida law, "[t]he elements of an action for breach of contract are:
17  (1) the existence of a contract, (2) a breach of the contract, and (3) damages
18  resulting from the breach." *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. Ct.
19  App. 2006).  "In addition, in order to maintain an action for breach of contract, a
20  claimant must also prove performance of its obligations under the contract or a
21  legal excuse for its nonperformance." *Id*.  "What will constitute breach of
22  contract is a matter of law to be determined by the court. Whether or not that has
23  occurred which would constitute a breach of contract is a matter of fact to be
24  determined by a jury." *Winter Garden Citrus Growers' Ass'n v. Willits*, 113 Fla.
25  131, 135-36, 151 So. 509 (1933).

26       Under Texas law, "the elements of a claim for breach of contract are: (1)
27  the existence of a valid contract; (2) performance or tendered performance by the

28

1  plaintiff; (3) breach of the contract by the defendant; and (4) damages to the

2  plaintiff resulting from that breach." *Walker v. Presidium, Inc*., 296 S.W.3d 687,

3  693 (Tx. Ct. App. 2009).

4        The Court first addresses Bank of America Defendants' argument that the

5  claim should be dismissed because Plaintiffs breached the Agreements by failing

6  to maintain insurance on the mortgaged properties.  (BoA Mem. at 20.)  Plaintiffs

7  argue in response that under Texas and Florida law, Bank of America Defendants

8  are prevented from asserting the purported prior material breach by Plaintiffs as

9  an excuse for its own alleged failure to perform, because Bank of America

10 Defendants continued to operate under the contracts by force-placing insurance

11 and benefitted financially from the force-placement.  (Opp'n to BoA at 18.)  Bank

12 of America Defendants do not address this argument in their Reply, and the Court

13 agrees that under Florida and Texas law Bank of America Defendants cannot

14 excuse their own alleged breach based on the breach allegedly committed by

15 Plaintiffs.

16       This Court has found similar allegations based on identical contract terms

17 sufficient to state a claim for breach of contract under Illinois law, where the

18 breach was based on the Insurance Provision.  *See Gustafson I*, 2012 WL

19 4761733, at *4.  In this case, Plaintiffs allege a breach based on the Limiting

20 Provision.  (*See* Opp'n to BoA at 16.)

21       The Court finds that the Limiting Provision applies to the Insurance

22 Provision and supports a claim for breach of express contract terms.  Under the

23 Limiting Provision, "if Borrower fails to perform the covenants and agreements

24 contained in this Security Instrument," "then Lender may do and pay for whatever

25 is reasonable and appropriate to protect the Lender's interest in the Property . . . ."

26 (Limiting Provision.)  One covenant under the Agreement is that the borrower

27 maintain insurance, and accordingly the actions Bank of America may take to

28

protect its interests in the Property—including obtaining force-placed insurance on the Property—must be "reasonable" and "appropriate."  The Limiting Provision therefore applies to Bank of America Defendants' conduct under the Insurance Provision.  *Accord Lauren v. PNC Bank, N.A*., 13-cv-762, 2013 WL 5565511, at *6 (W.D. Pa. Oct. 8, 2013) (noting that a "majority of other courts to consider the issue" have found that "Sections 5 and 9 of the mortgage may be read consistently and in conjunction with each other").

The Court finds Plaintiffs' allegations are sufficient to state a claim for breach of contract at this stage of the proceedings.  While the Limiting Provision afforded the Bank of America Defendants discretion to force-place insurance on Plaintiffs' respective properties under the Insurance Provision, it did not necessarily permit the Bank of America Defendants to do so in the manner alleged by Plaintiff.  Nor are the allegations that Bank of America Defendants failed to act in a "reasonable" or "appropriate" manner implausible.  The Court therefore does not find the other non-binding authority cited by Bank of America Defendants persuasive.  (*See* BoA Reply at 13.)

Accordingly, Bank of America Defendants' Motion is DENIED as to the breach of contract claim.

**E.     Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

Plaintiffs allege that Bank of America Defendants breached the implied covenant of good faith and fair dealing by exercising the discretion vested in them under the Insurance Provision and Reasonableness Provision in bad faith. (Compl. ¶¶ 140-46.)  The Court finds that Kovac Plaintiffs have adequately stated

14

1    a claim under Florida law, but that Faili Plaintiffs have failed to state a claim

2    under Texas law.[2]

3         The Court first addresses Bank of America Defendants' argument that the

4    claim for breach of the implied covenant of good faith and fair dealing is

5    "grounded in fraud" and should be dismissed under the heightened pleading

6    standard of Rule 9(b).  (BoA Mem. at 20-21.)  When fraud is not the essential

7    element of a claim, then only allegations of fraudulent conduct must satisfy the

8    heightened pleading requirements of Rule 9(b).  *See Vess v. Ciba-Geigy Corp.*

9    *USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).  Here, fraud is not an essential

10   element of Plaintiffs' claim for breach of the implied covenant of good faith and

11   fair dealing. (Compl. ¶ 144.)  The Court need not determine whether the

12   allegations as to misrepresentations meet the heightened pleading standard,

13   because with respect to Kovac Plaintiffs, the remaining allegations are sufficient

14   to state a claim for breach of the implied covenant of good faith and fair dealing,

15   and with respect to Faili Plaintiffs, the claim fails as a matter of law for reasons

16   unrelated to the specificity of the misrepresentation allegations.

17

18              **1.        Kovac Plaintiffs' Claim**

19         Under Florida law, "every contract includes an implied covenant that the

20   parties will perform in good faith."  *County of Brevard v. Miorelli Eng'g, Inc.,*

21   703 So.2d 1049, 1050 (Fla. 1997).  To state claim for breach of the implied

22   covenant of good faith and fair dealing, Kovac Plaintiffs must allege conduct by

23   _____

24   [2] The Faili and Kovac Agreements provide that they "shall be governed by federal law

25   and the law of the jurisdiction in which the Property is located."  (Faili and Kovac
     Agreements § 16.)  Because the Kovac Property is located in Florida, the Court will

26   apply Florida law to Kovac Plaintiffs' breach of implied covenant and breach of contract

27   claims.  Likewise, because the Faili Property is located in Texas, the Court will apply
     Texas law to Faili Plaintiffs' breach of implied covenant and breach of contract claims.

28

1    Bank of America Defendants that contravenes their reasonable contractual

2    expectations.  *Cox v. CSX Intermodal Inc.*, 732 So.2d 1092, 1098 (Fla. Ct. App.

3    1999).  When a contracting party is given discretion to act under the contract, the

4    "limit placed on [that] party's discretion is not great."  *Ernie Haire Ford, Inc. v.*

5    *Ford Motor* Co., 260 F.3d 1285, 1290-91 (11th Cir. 2001).  However, even

6    "where the terms of the contract afford a party substantial discretion to promote

7    that party's self-interest, the duty to act in good faith nevertheless limits that

8    party's ability to act capriciously to contravene the reasonable contractual

9    expectations of the other party."  *Cox*, 732 So.2d at 1097-98.  Under Florida law,

10   a claim for breach of the implied covenant of good faith and fair dealing also

11   requires allegations of a breach of an express term of the contract.  *See Ins.*

12   *Concepts and Design, Inc. v. Healthplan Servs., Inc*., 785 So. 2d 1232, 1234 (Fla.

13   Dist. Ct. App. 2001).

14         Kovac Plaintiffs have adequately pleaded a claim for breach of the implied

15   covenant of good faith and fair dealing under Florida law.  Kovac Plaintiffs allege

16   that Bank of America Defendants exercised their discretion to force-place

17   insurance under the Insurance Provision and Limiting Provision in bad faith and

18   in a manner inconsistent with the parties' reasonable expectations, including by

19   (1) purchasing insurance from Insurance Defendants, with which Bank of

20   America Defendants had a prearranged agreement to receive kickbacks, instead of

21   pricing insurance on the open market; and (2) backdating the force-placed policy

22   to cover a period of time for which Bank of America Defendants had no risk of

23   loss.  (*See* Compl. ¶ 144.)  Under Florida law, Kovac Plaintiffs must also allege a

24   breach of an express term of the contract.  Kovac Plaintiffs have done so with

25   respect to the Limiting Provision for the reasons discussed above in the section on

26   Plaintiffs' breach of contract claim.  The Court finds Kovac Plaintiffs' allegations

27   sufficient to state a claim for breach of the implied covenant of good faith and fair

28

1    dealing under Florida law, and accordingly Bank of America Defendants' Motion

2    is DENIED as to Kovac Plaintiffs' claim.

3

4

5                              **2.     Faili Plaintiffs' Claim**

6                Under Texas law, "[t]here is not, as a matter of law, a covenant of good

7    faith and fair dealing in every contract."   *White v. Mellon Mortg. Co*., 995 S.W.2d

8    795, 800 (Tex. App. 1999).  Instead, there must be a "special relationship"

9    between the parties to allege a breach of the implied covenant of good faith and

10   fair dealing.  *See id.*  "[T]his requisite special relationship and the circumstances

11   which give rise to a duty of good faith and fair dealing are very limited."  *Id*.  A

12   lender-placed insurance policy on a mortgage does not create a "special

13   relationship" between a lender and borrower.  (BoA Mem at 22-23); *Garcia v.

14   Bank of America Corp*., 375 S.W.3d 322, 332-33 (Tex. App. 2012) (affirming

15   dismissal of implied covenant claim in force-placed insurance case due to lack of

16   "special relationship" between borrower and Bank of America).

17               Plaintiffs argue that *Garcia* is "irrelevant as it does not address allegations

18   of self-dealing," (Opp'n to BoA at 22), but self-dealing has nothing to do with

19   whether the required "special relationship" exists between Faili Plaintiffs and

20   Bank of America Defendants.  Nor does the Court find persuasive Plaintiffs'

21   argument that the existence of an escrow account creates a "special relationship"

22   between a mortgagor and mortgagee.  *See White*, 995 S.W.2d at 800-01.

23   Accordingly, the Motion is GRANTED as to Faili Plaintiffs' claim and their claim

24   is DISMISSED WITH PREJUDICE.

25

26

27

28

**F.    California Unfair Competition Law Claim**

Defendants make several arguments as to why Plaintiffs' California UCL claim should be dismissed.  The Court finds that Plaintiffs' California UCL claim must be dismissed in light of the choice of law clauses in the Agreements, and therefore does not consider Defendants' other asserted grounds for dismissal.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1187 (9th Cir.2001).  California courts apply two different analyses for selecting which law should apply in an action.  *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 914–15, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001).  Where the parties have entered into a contract that specifies that another jurisdiction's law will govern their disputes, courts apply the framework set forth in *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992).  Because Plaintiffs' Agreements contain a choice of law provision, the Court uses the analysis set forth in *Nedlloyd* to determine the controlling substantive law.[3]

In *Nedlloyd*, the California Supreme Court held that "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized . . . ."  *Nedlloyd*, 3 Cal.

---

[3] "[T]he scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined under the law designated therein." *Wash. Mut. Bank*, 24 Cal.4th at 916 n.3. In *Nedlloyd,* however, the court applied California law to determine the scope of a choice-of-law provision designating Hong Kong law as the governing law because "neither [party] requested judicial notice of Hong Kong law on the point nor supplied evidence of the relevant aspects of that law." *Id.*  Here, no party requested judicial notice nor supplied evidence of Florida or Texas law with respect to the scope of the choice of law provision.  Thus, the Court will apply California law to determine the scope of the relevant choice-of-law provisions. *Accord Gustafson v. BAC Home Loans Servicing LP*, --- F.R.D. ---, 2013 WL 5911252, at *3 n.4 (C.D. Cal. Nov. 4, 2013) ("*Gustafson IV*").

1  4th at 470.  Here, the form contracts at issue specify that they "shall be governed

2  by Federal law and the law of the jurisdiction in which the property is located."

3  (Faili and Kovac Agreements § 16.)

4      Plaintiffs do not challenge the validity of this clause—indeed, they cite law

5  from the states designated by these choice of law provisions for their other

6  claims—but argue that the conduct alleged in the California UCL claim "is not

7  governed by Plaintiffs' mortgage contracts."  (Opp'n to BoA at 8.)  However, the

8  crux of Plaintiffs' California UCL claim is that Defendants engaged in unfair

9  business practices when they used their authority under Plaintiffs' mortgage

10 contracts to force place insurance that included costs and fees unrelated to the

11 provision of insurance.  According to Plaintiffs, "Bank of America violated its

12 common law and statutory duties to borrowers by exploiting its authority to force-

13 place insurance under the mortgage to engage in blatant profiteering to the

14 detriment of borrowers."  (Opp'n to BoA at 5.)  Plaintiffs also "claim that the

15 Insurance Defendants, in conjunction with Bank of America engaged in numerous

16 unfair practices by 'acting in concert to abuse their market position' to reap profits

17 at Plaintiffs' and other borrowers' expense."  (Opp'n to QBE at 17 (quoting

18 Compl. ¶ 161).)  Plaintiffs' claim therefore stems from contractual provisions that

19 allow the force-placement of insurance on the properties.  Thus, the Court finds

20 that Plaintiffs' California UCL claim falls within the scope of the choice-of-law

21 provision.  *Accord Gustafson IV*, 2013 WL 5911252, at *4.[4]

22

23 [4] Plaintiffs argue that the choice of law provision should not apply to its California UCL
   claim against Insurance Defendants, as they are not parties to the contract.  (Opp'n to Ins.

24 at 16.)  However, the choice of law provision "encompasses *all* causes of action arising
   from *or related to* that agreement, regardless of how they are characterized," *Nedlloyd*, 3

25 Cal. 4th at 470 (emphasis added), and Plaintiffs are parties to the contract and their
   claims against Insurance Defendants stem from that agreement for the reasons stated

26 above.  *Accord Gustafson IV*, 2013 WL 5911252, at *4 (finding that similar claim under
   California UCL against both lender and force-placed insurance provider fell within

27 identical choice of law provision).

28

1    Once a court determines that a claim falls within the scope of a choice-of-

2    law clause, it must consider whether the clause is enforceable. *Wash. Mut. Bank*,

3    24 Cal.4th at 916. In assessing the enforceability of a choice-of-law provision,

4    California courts follow the approach of section 187(2) of the Restatement

5    (Second) of Conflict of Laws. *Id.* Under that approach, the proponent of the

6    choice-of-law provision bears the burden of showing that the chosen state "has a

7    substantial relationship to the parties or their transaction" or that "there is any

8    other reasonable basis for the parties' choice of law." *Id.* If either of these tests is

9    met, the choice-of-law provision will be enforced "unless the other side can

10   establish both that the chosen law is contrary to a fundamental policy of California

11   and that California has a materially greater interest in the determination of the

12   particular issue." *Id.*, 24 Cal. 4th at 917.

13   Here, Defendants have met their burden under section 187. The chosen

14   states in the choice-of-law provisions bear a substantial relationship to the

15   contracting parties and to their respective transactions. The contracting parties

16   chose the law of the states in which each property is located, and none of the

17   parties dispute the location of each property. Because each property is the subject

18   of its respective mortgage contract, the Restatements test is easily met. *See*

19   *Gustafson IV*, 2013 WL 5911252, at *4.

20   Thus, the Court will enforce the choice-of-law provision unless Plaintiffs

21   can show that both (1) "the chosen state's law is contrary to a fundamental policy

22   of California" *and* (2) "California has a materially greater interest in the

23   determination of the particular issue." *Wash. Mut. Bank*, 24 Cal.4th at 917. Only

24   if "there is a fundamental conflict with California law" must the court "then

25   determine whether California has a 'materially greater interest than the chosen

26   state in determination of the particular issue . . . .'" *Id.*, 24 Cal. 4th at 916.

27

28

Plaintiffs have not met their burden of demonstrating that the chosen states' laws are contrary to a fundamental policy of California, and accordingly the Court does not address whether California has a materially greater interest in the determination of the issues raised by Plaintiffs.  Plaintiffs offer no analysis whatsoever of the chosen states' laws.[5]   Instead, Plaintiffs argue that "California plainly has a fundamental interest at stake," namely "the regulation and prevention of unfair and deceptive conduct by businesses operating in and from California."  (Opp'n to BoA at 10-11.)  This argument does not address the prerequisite issue of whether the chosen states' laws would be contrary to a fundamental policy of California.  *See Wash. Mut. Bank*, 15 P.3d at 916. Plaintiffs also make the conclusory argument that "the choice of law provision in Plaintiffs' mortgages should not be enforced because it is contrary to this states' fundamental policy as expressed in the UCL." (BoA Opp'n at 11.)  However, Plaintiffs provide no explanation as to *what* that fundamental policy is, or how the chosen states' laws would be contrary to that fundamental policy.  To the extent Plaintiffs are arguing, without support, that it is a fundamental policy of California to apply its UCL, this argument sidesteps whether there is any conflict with the chosen state's law.  The Court finds that Plaintiffs have failed to meet their burden of showing that the designated states' law would be contrary to a fundamental policy of California, and therefore finds that the choice-of-law provisions are enforceable and bar Plaintiffs' claim under California's UCL.  *Cf. Gustafson IV*, 2013 WL 5911252, at *4.

Accordingly, the Motion is GRANTED as to the California UCL claim. As the Court finds that Plaintiffs cannot remedy the defects in their California

---

[5] Bank of America Defendants provided a table of purported similarities between these states' laws in their opening brief, which Plaintiffs did not address.  (*See* BoA Mem. at 9.)

1  UCL claim by amending their pleading, the California UCL claim is DISMISSED
2  WITH PREJUDICE.

3

4  **G.      Restitution/Unjust Enrichment/Disgorgement Claim**

5          As a threshold matter, Insurance Defendants argue that this claim should be
6  dismissed because Plaintiffs do not specify which law applies to their claim.  (Ins.
7  Mem. at 19; Ins. Reply at 13.)  Plaintiffs argue in their Opposition the claim is
8  governed by California law, "[b]ecause Plaintiffs' unjust enrichment claims are
9  extra contractual."  (Opp'n to Ins. at 21 n.13, 22.)  The Court declines to dismiss
10  the claim merely because the Complaint does not specify which law Plaintiffs
11  intend to apply.  As the Court finds that the claim is adequately pleaded under
12  California law, Florida law, and Texas law, the Court declines to determine at this
13  stage which law or laws apply.

14          Plaintiffs allege that they do not have a contract with Insurance Defendants
15  as a result of the imposition of force-placed insurance.  (Compl. ¶ 165.)  Plaintiffs
16  further allege that (1) Insurance Defendants received and retained enrichment in
17  the form of insurance premiums for backdated, duplicative and unnecessary force-
18  placed insurance; and (2) it would be unjust for Insurance Defendants to retain
19  that benefit given Defendants' self-dealing conduct.  (*Id.* ¶¶ 166-68.)

20          Under California law, "[t]here is no cause of action for unjust enrichment.
21  Rather, unjust enrichment is a basis for obtaining restitution based on quasi-
22  contract or imposition of a constructive trust."  *McKell v. Wash. Mut., Inc.,* 142
23  Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227 (2006).  As Plaintiffs have styled this
24  claim as one for "unjust enrichment/disgorgement" and seek restitution, (Compl.
25  at 40, ¶ 170), the Court construes Plaintiffs' unjust enrichment claim as a claim
26  for restitution.  "Under the law of restitution, an individual may be required to
27  make restitution if he is unjustly enriched at the expense of another."  *Ghirardo v.*

28

*Antonioli*, 14 Cal.4th 39, 51, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996).  "A person is enriched if he receives a benefit at another's expense."  *Id.*  However, "[e]ven when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."  *Id.* (internal quotation marks and citation omitted).

This Court previously determined that similar allegations were sufficient to state a claim for restitution under California law, relying on another district court decision finding the same.  *See Gustafson III* at *12.  The Court finds that the allegations described in this section are sufficient to state a claim under California law for the same reasons.

Under Texas law, unjust enrichment "is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."  *Doss v. Homecoming Financial Network, Inc.*, 210 S.W.3d 706, 710 n.4 (Tex. Ct. App. 2006) (citations and internal quotation marks omitted).  Texas courts recognize a related cause of action for money had and received, which "may be maintained to prevent unjust enrichment when the defendant obtains money, which in equity and good conscience belongs to the plaintiff.  A cause of action for money had and received is not based on wrongdoing but instead[] looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.  It is essentially an equitable doctrine applied to prevent unjust enrichment."  *Id*. at 711.  As Plaintiffs style the claim as one for "unjust enrichment/disgorgement" and seek "restitution," (Compl. at 40, ¶¶ 169, 175), the Court construes the claim under Texas law as a claim for money had and received.  *See Hancock v. Chicago Title Ins. Co*., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009)

1  (noting similar treatment by Texas Court of Appeal and finding that plaintiff

2  could not simultaneously maintain claims for unjust enrichment and money had

3  and received.).

4       The Court finds that the same allegations cited above are sufficient to state

5  a claim under Texas law for money had and received, as Plaintiffs allege that they

6  conferred a benefit on Insurance Defendants that was inequitably retained by

7  Insurance Defendants.

8       Under Florida law, to state a claim for unjust enrichment Plaintiffs must

9  allege that (1) Plaintiffs conferred a benefit on the defendant; (2) Insurance

10  Defendants voluntarily accepted and retained that benefit; and (3) the

11  circumstances are such that it would be inequitable for Insurance Defendants to

12  retain it without paying the value thereof.  *Fla. Power Corp. v. City of Winter*

13  *Park,* 887 So.2d 1237, 1241 n.4 (Fla. 2004).

14       Insurance Defendants argue that to state a claim for unjust enrichment

15  under Florida law the benefit must be directly conferred, citing *Virgilio v. Ryland*

16  *Group, Inc*., 680 F.3d 1329, 1337 (11th Cir. 2012).  (Ins. Mem. at 20.)  In *Virgilio*,

17  plaintiff homeowners sued their home developers and the developers' marketing

18  group for failure to disclose a nearby decommissioned bombing range.  680 F.3d

19  at 1332.  The home developer paid the marketing group a percentage of its home

20  sales revenue, which plaintiffs sought to obtain from the marketing group through

21  their claim for unjust enrichment.  *Id.* at 1332, 1337.  The *Virgilio* court, without

22  citing any decision on Florida law for direct support, found the conferred benefit

23  too indirect because "[plaintiffs] do not seek to recover money [the marketing

24  company] received as partial payment for the houses [plaintiffs] bought; instead,

25  they seek the money [the homebuilder] paid *for marketing services* under an

26  entirely separate services contract."  *Id*. at 1337 (emphasis in original).

27

28

Here, by contrast, Plaintiffs seek to recover portions of insurance premiums for insurance policies on homes that they mortgaged.  (Compl. ¶¶ 166-68.) *Virgilio* is distinguishable on these grounds, and in any event did not explicitly or implicitly overrule a number of cases finding the benefit conferred by a borrower to an insurer force-placing insurance sufficiently direct at the motion to dismiss stage.  *See Holmes v. Bank of America, N.A.*, 12-cv-487, 2013 WL 2317722, at *6 (W.D. N. Car. May 28, 2013) (explicitly addressing effect of *Virgilio*); *see also, e.g.*, *Ulbrich v. GMAC Mort., LLC,* No. 11-62424, 2012 WL 3516499, at *1–3 (S.D. Fla. Aug. 15, 2012) (payment of force-placed premiums through mortgage escrow account not too indirect); *Williams v. Wells Fargo Bank N.A.,* No. 11–21233–CIV, 2011 WL 4368980, at *1–2, *8–10 (S.D. Fla. Sept. 19, 2011) ("the mere fact that there has been no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff"); *Abels v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 1273, 1276 (S.D. Fla. 2009) ("whether benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss").

The Court finds that, at this stage, the allegations cited above are sufficient to state a claim for unjust enrichment under Florida law because they allege that Plaintiffs conferred a benefit on Insurance Defendants, which was retained by Insurance Defendants, and that it would be inequitable for Insurance Defendants to retain the benefit without paying the value thereof.  (Compl. ¶¶ 166-68.)

Accordingly, Insurance Defendants' Motion is DENIED with respect to Faili Plaintiffs' claim for unjust enrichment.

### H.   Florida Consumer Collection Practices Act ("FCCPA")

Kovac Plaintiffs allege that Defendants violate the Florida Consumer Collections Practices Act, Florida Statute § 559.72(9) and 559.72(18).  In

1  pertinent part, the FCCPA provides that in collecting consumer debts, no person

2  shall:

3     (9) Claim, attempt, or threaten to enforce a debt when such person

4     knows that the debt is not legitimate, or assert the existence of some

5     other legal right when such person knows that the right does not

6     exist.

7     * * *

8     (18) Communicate with a debtor if the person knows that the debtor

9     is represented by an attorney with respect to such debt and has

10    knowledge of, or can readily ascertain, such attorney's name and

11    address, unless the debtor's attorney fails to respond within 30 days

12    to a communication from the person, unless the debtor's attorney

13    consents to a direct communication with the debtor, or unless the

14    debtor initiates the communication . . . .

15 Fla. Stat. § 559.72(9), (18).  The FCCPA has a two year statute of limitations.

16 Fla. Stat. § 559.77(4).

17    Kovac Plaintiffs claim that Defendants violated the FCCPA by charging

18 for and pursuing collection of force-placed insurance, and that Defendants had

19 "full knowledge that the debt was not legitimate."  (Compl. ¶ 183.)  Defendants

20 make numerous arguments as to why the claim should be dismissed.  The Court

21 addresses each argument, beginning with those that are most persuasive, and finds

22 that Kovac Plaintiffs have stated a claim under paragraph 9 of section 559.72 for

23 conduct occurring within two years prior to the filing of the Complaint.

24    Defendants argue that the claim under paragraph 18 of section 559.72

25 should be dismissed because Kovac Plaintiffs make no allegations that they were

26 represented by an attorney with respect to their force-placed insurance, or that any

27 Defendant knew that Kovac Plaintiffs were represented by an attorney.  (BoA

28

26

Mem. at 25 n. 36; Ins. Mem. at 24.)  Kovac Plaintiffs do not address this issue in their Oppositions.  The Court agrees with Defendants and dismisses the claim without prejudice to the extent it is based on Florida Statute Section 559.72 (18).

Defendants challenge the FCCPA claim in part as time barred under the statute's two year statute of limitations.  Kovac Plaintiffs admit that their claim against Insurance Defendants is time-barred with respect to conduct occurring prior to July 23, 2011.  As to the claim against Bank of America Defendants, Kovac Plaintiffs admit the claim is time-barred in part but argue that the statute of limitations should be tolled.  (*Compare* Opp'n to Ins. at 24 n.15 *with* Opp'n to BoA at 24-25.)  Kovac Plaintiffs cite no legal authority for tolling an FCCPA claim, nor do Kovac Plaintiffs clearly allege how or when they discovered their claim.  Kovac Plaintiffs make a passing reference to "secret arrangements" in their Complaint, (Compl. ¶ 13), but this allegation does not explain when the claim was discovered or how long the claim should be tolled.  Based on Kovac Plaintiffs' allegations, their claim is limited to conduct occurring within the two-year statute of limitations period prior to the filing of the Complaint.

The Court does not find Defendants' remaining arguments persuasive. Defendants argue that Kovac Plaintiffs fail to allege a debt that was not "legitimate" or not authorized by some "legal right" and instead allege only that the amount of debt was incorrect.  (BoA Mem. at 25-26; Ins. Mem. at 24-25.) Defendants cite for support *Locke v. Wells Fargo Home Mortg*., No. 10-60286, 2010 WL 4941456, at *2-3 (S.D. Fla. Nov. 30, 2010), but the *Locke* Court did not find that a significant, bona fide dispute as to the amount of a debt meant that the debt was still "legitimate" or that a "legal right" exists to collect the debt.  Indeed, other courts have declined to dismiss FCCPA claims based on a dispute as to the amount of a debt. *Accord Melillo v. Shendell & Associates, P.A*., No. 11-62048-CV, 2012 WL 253205, at *6 (S.D. Fla. Jan. 26, 2012).  Here, the allegations

1  regarding the parties' dispute as to the amount of the debt—based on, among

2  other things, kickbacks as well as backdated and duplicative insurance—are

3  sufficient to state a claim that the debt was not "legitimate" or authorized by a

4  "legal right."

5       Insurance Defendants argue that Kovac Plaintiffs have alleged debt

6  collection activity only as to Bank of America Defendants.  (Ins. Mem. at 24.)  In

7  support, Insurance Defendants cite *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d

8  384, 388-89 (7th Cir.1998), which held that a letter that merely described the

9  current status of a debtor's account was not debt collection activity for purposes of

10  the federal Fair Debt Collection Practices Act ("FDCPA").[6]  The Seventh Circuit

11  has since limited *Bailey*, holding that an explicit demand for payment is not

12  required under the FDCPA.  *See Gburek v. Litton Loan Servicing LP*, 614 F.3d

13  380, 385 (7th Cir. 2010).  Instead, the purpose and context of the communications

14  are also important, which cannot always be determined at the motion to dismiss

15  stage.  *See id*. at 385-86.  As Insurance Defendants sent letters to Kovac Plaintiffs

16  stating the amount they were being charged for their insurance premium, and the

17  relationship between Insurance Defendants and Kovac Plaintiffs arises out of the

18  payment of insurance premiums and insurance of the Property, the Court declines

19  to find, at this stage, that Insurance Defendants have not engaged in debt

20  collection activity under the FCCPA.

21       Insurance Defendants also argue that the claim inappropriately "lumps" all

22  of the Defendants together.  (Ins. Mem. at 23 (citing *Bentley v. Bank of Am., N.A.,*

23

24  [6] According to the FCCPA, "[i]n applying and construing [the FCCPA], due

25  consideration and great weight shall be given to the interpretations of . . . the federal
    courts relating to the federal Fair Debt Collection Practices Act."  Fla. Stat. § 559.77(5).

26  Insurance Defendants also cite *Walcker v. SN Commercial, LLC*, 286 F. App'x 455 ,457

27  (9th Cir. 2008) (unpublished).  *Walcker* relied on *Bailey* to interpret Washington state's
    version of the FDCPA, and accordingly is not persuasive.

28

773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011).)  However, Kovac Plaintiffs

specifically allege and provide exhibits demonstrating that BAC Home Loans

Servicing deducted force-placed insurance premiums from their account and that

Balboa and QBE Specialty provided the force-placed insurance.  Kovac Plaintiffs

also allege the nature of the relationships and agreements between Defendants.

(Compl. ¶¶ 52-59, 100-11, Exs. 22-24.)  Thus, in light of the other allegations in

the Complaint, and bearing in mind that the claim is not evaluated under the

heightened pleading standard of Rule 9(b), the Court does not find that Kovac

Plaintiffs' FCCPA claim inappropriately "lumps" all of the Defendants together.

Finally, the Court finds that Kovac Plaintiffs have pleaded facts, which the

Court accepts as true at this stage, sufficient to show that Defendants had actual

knowledge of the alleged illegitimacy of the debt.  Kovac Plaintiffs allege that the

debt was illegitimate due in part to kickbacks, commissions and backdated and

duplicative policies, and Kovac Plaintiffs argue that the government investigations

into similar force-placed insurance policies, one of which resulted in a consent

order, are sufficient to demonstrate knowledge.  (*Id.* ¶¶ 19-28, 117-26; *see also*

Opp'n to BoA at 23.)  The Court agrees that the allegations, when taken together

and read in a light most favorable to Kovac Plaintiffs, are sufficient to survive a

motion to dismiss.[7]

Accordingly, the Court GRANTS IN PART and DENIES IN PART

Defendants' Motions with respect to the FCCPA claim.  The Motions are

GRANTED and the claim is DISMISSED WITHOUT PREJUDICE to the extent

the claim is based on Fla. Stat. § 559.72(18) and to the extent the claim is based

---

[7] Whether or not Defendants in fact had actual knowledge of the illegitimacy of the debt, and whether or not Defendants can assert a "good faith belief" defense, are factual issues that the Court will not resolve at this stage.  *See McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008).

on conduct occurring more than two years prior to the filing of the Complaint. The Motions are DENIED to the extent Kovac Plaintiffs allege conduct by Defendants in violation of Fla. Stat. § 559.72(9) that occurred within two years of the filing of the Complaint.

## I.     Declaratory and Injunctive Relief Claim

In a footnote at the end of its brief, Bank of America Defendants state that this claim should be dismissed because it relies on Plaintiffs' other claims and fails for the same reasons that the other claims fail.  (BoA Mem. at 29 n.46.)  As the Court is not dismissing all of Plaintiffs' other claims, the Court will not dismiss the declaratory relief claim either.

Bank of America Defendants also seek to dismiss the claim for injunctive relief, arguing that the Complaint alleges that Faili Plaintiffs have paid off their loan in full.  The Complaint does not make a similar allegation as to Kovac Plaintiffs, nor does the Complaint state that Kovac Plaintiffs continue to be charged for force-placed insurance.[8]  Plaintiffs do not address Bank of America Defendants' argument in their opposition briefing, and the Court agrees that based on the facts and allegations before the Court the claim for injunctive relief currently is not appropriate.

Accordingly, as to the claim for declaratory relief, Bank of America Defendants' Motion is DENIED.  As to the claim for injunctive relief, Bank of America Defendants' Motion is GRANTED and the claim is DISMISSED WITHOUT PREJUDICE.  Plaintiffs may amend their pleading to seek injunctive relief only if they are able to do so consistent with the requirements of Rule 11.

---

[8] It appears that Kovac Plaintiffs' force-placed insurance was cancelled in April 2013, after the loan was paid in full.  (Lindenbaum Decl. Ex. 12, Doc. 35-2 (cancellation notice sent from QBE Specialty to Kovac Plaintiffs).)

1

2 **IV.    CONCLUSION**

3       For the foregoing reasons the Court GRANTS IN PART and DENIES IN

4 PART Defendants' Motions.

5       Insurance Defendants' Motion is DENIED with respect to QBE Insurance

6 and QBE Specialty.  Plaintiffs may seek discovery as to QBE Insurance's standing

7 and may amend their pleading to correct the omission of QBE Specialty from the

8 allegations.

9       The Motions are DENIED to the extent they request dismissal of all of

10 Kovac Plaintiffs' claims under the filed rate doctrine.

11       As to the breach of implied covenant of good faith and fair dealing claim,

12 Bank of America Defendants' Motion is GRANTED with respect to Faili

13 Plaintiffs' claim under Texas law, and the claim is DISMISSED WITH

14 PREJUDICE; the Motions are DENIED with respect to the Kovac Plaintiffs'

15 claim under Florida law.

16       As to the breach of contract claim, Bank of America Defendants' Motion is

17 DENIED.

18       As to the claim for violation of the California UCL, the Motions are

19 GRANTED and the claim is DISMISSED WITH PREJUDICE.

20       As to the unjust enrichment/disgorgement claim, Insurance Defendants'

21 Motion is DENIED.

22       As to the FCCPA claim, the Motions are GRANTED and the claim is

23 DISMISSED WITHOUT PREJUDICE to the extent it is based on Fla. Stat.

24 § 559.72(18) and to the extent it is based on conduct occurring more than two

25 years prior to the filing of the Complaint; the Motions are DENIED to the extent

26 Kovac Plaintiffs allege conduct by Defendants in violation of Fla. Stat.

27 § 559.72(9) that occurred within two years of the filing of the Complaint.

28

1        As to the claim for declaratory relief, Bank of America Defendants' Motion

2  is DENIED; as to the claim for injunctive relief, Bank of America Defendants'

3  Motion is GRANTED and the claim for injunctive relief is DISMISSED

4  WITHOUT PREJUDICE.

5        Any amended pleading addressing must be filed within **21 days** of this

6  Order.

7

8

9  DATED: January 23, 2014          JOSEPHINE L. STATON

10                                   JOSEPHINE L. STATON
                           UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28